AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br>Allyshae Iyana St James<br><br>*Defendant(s)* | Case No. 6:24-MJ-00008-HBK |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __04/26/2024__ in the county of __Mariposa__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 36 CFR 2.32 (a)(1) | Interfering with agency functions |
| 36 CFR 2.34(a)(4) | Disorderly conduct |
| 36 CFR 4.14(b) | Open container of alcoholic beverage |

This criminal complaint is based on these facts:

See affidavit attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Nicholas Sullens US Park Ranger
*Printed name and title*

Sworn to before me consistent with Fed. R. Crim. P. 4.1.

Date: April 29, 2024

_____
*Judge's signature*

Helena M. Barch-Kuchta, U.S. Magistrate Judge
*Printed name and title*

City and state: Yosemite, CA

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

### BACKGROUND OF AFFIANT

1. I, Nicholas Patrick Sullens, further state, I am a Law Enforcement Officer ("Officer"), employed by the National Park Service ("NPS"). I have been a U.S. Park Ranger since May 2021. I attended NPS Seasonal Law Enforcement Academy in Franklin, North Carolina. I have investigated many unsafe driving operation incidents as well as many open container incidents. I have a Bachelor of Arts degree from the University of California Santa Barbara in Environmental Science. I am a certified National Park Service Advanced Emergency Medical Technician.

2. The facts of this criminal complaint are based on my personal observations, on my training and experience, as well as my consultation with other LEOs. This affidavit is intended to show merely that there is sufficient probable cause for the criminal complaint and does not set forth all my knowledge about this matter. The facts of this criminal complaint are based on my personal observations, on my training and experience, as well as my consultation with other LEOs. This affidavit is intended to show merely that there is sufficient probable cause for the criminal complaint and does not set forth all my knowledge about this matter.

### JURISDICTION

3. The facts set forth in this criminal complaint occurred on April 26th, 2024, within the geographic boundaries of Yosemite National Park, California. Yosemite National Park is an area of federally owned public land administered by the NPS. Yosemite National Park is an area of the special maritime and territorial jurisdiction of the United States as defined by

PAGE 1 OF 6

Title 18 U.S.C. § 7 (3): "Special maritime and territorial jurisdiction of the United States defined" and by Title 16 U.S.C. § 57: "Yosemite and Sequoia National Parks; exclusive jurisdiction of United States."

4. Yosemite National Park is located within Mariposa, Madera, Mono and Tuolumne Counties, all of which are located within the Eastern District of California.

## CHARGES

5. Based upon the facts set forth in this criminal complaint, I believe probable cause existed to believe that ALLYSHAE IYANA ST JAMES, violated the following laws of the United States on April 26th, 2024 within Yosemite National Park:

**Charge 1.** *36 CFR § 2.32 Interfering with agency functions.*

(a) The following are prohibited:
(1) *Interference.* Threatening, resisting, intimidating, or intentionally interfering with a government employee or agent engaged in an official duty, or on account of the performance of an official duty.
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Charge 2.** *36 CFR § 2.34 Disorderly Conduct*

(a)(4) Creates or maintains a hazardous or physically offensive condition.
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Charge 3.** *36 CFR § 4.14 Open container of alcoholic beverage.*

(b) Carrying or storing a bottle, can or other receptacle containing an alcoholic beverage that is open, or has been opened, or whose seal is broken or the contents of which have been partially removed, within a motor vehicle in a park area is prohibited.
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

## PROBABLE CAUSE

At approximately 1700 I, USPR Sullens, received a report from Yosemite Emergency Communications Center (YECC) of an orange or red Dodge sports car speeding through the Lower Pines Campground area.

USPR Cadigan and I spotted a red Dodge Challenger matching the description of the vehicle driving on Northside Drive at Ranger Y. We began following the vehicle, attempting to overtake the vehicle to initiate a vehicle stop.

The vehicle was traveling at a high rate of speed, swerving in and out of slower moving vehicles. Despite reaching speeds of 70 miles an hour while following the vehicle, I was not able to overtake the vehicle until El Capitan Meadow when it was forced to slow down due to traffic. The approximate distance between Ranger Y and El Capitan Meadow is approximately 3.3 miles. The speed limit from Ranger Y to just past Camp 4 is 25 miles per hour and the speed limit from Camp 4 to El Capitan Meadow is 35 miles per hour. The weather condition was a light rain and the road condition was wet.

I turned on my lights and sirens and initiated a vehicle stop on the red Dodge Challenger (CA LPN: CG77048) at approximately 1716. USPR Cadigan and I approached the vehicle and began our investigation into the traffic violations we witnessed.

I informed the driver of the vehicle later identified as DOMINIQUE DEROUEN, "DEROUEN" of the reason of the stop. After I stated I had stopped their vehicle because they were swerving in and out of vehicles in an unsafe manner at a high rate of speed, the passenger, later identified as ALLYSHAE ST JAMES "ST JAMES", began to speak in a raised voice denying that they were swerving in and out of vehicles. ST JAMES continued to speak in a raised voice as I asked DEROUEN to provide her drivers license, vehicle registration and proof of insurance. DEROUEN was unable to provide proof of insurance for the vehicle.

I conducted the requisite administrative checks of the vehicle and the driver and began writing violation notices for unsafe operations of a vehicle and failure to provide evidence of financial responsibility and improper disposal of refuse.

I returned to DEROUEN's vehicle and issued the citations. ST JAMES became visibly more agitated at this point, continuing to speak in a raised voice and gesticulating with both hands.

ST JAMES requested to speak with my supervisor. I informed the group that they were free to leave. ST JAMES opened her door and got out of the vehicle and began approaching our patrol vehicle yelling with raised hands. I told ST JAMES to get back in their vehicle and close the door as the door protruded into the lane of travel.

ST JAMES did not follow my order to return to her vehicle. I began driving away when ST JAMES intentionally struck my vehicle on the drivers door side with her body. USPR Cadigan and I drove away from the vehicle stop. DEROUEN began following our vehicle in her vehicle with their hazards flashing. DEROUEN was driving erratically, often over the median line while ST JAMES continued to yell at our patrol vehicle with the request to see my supervisor. DEROUEN failed to come to a complete stop while following us at the stop sign at Pohono Bridge and was following too closely behind our vehicle. DEROUEN followed us for approximately seven minutes.

I requested my supervisor, USPR Cassling, to meet us at El Capitan Cross which was the most convenient location given the nature of the Yosemite Valley traffic pattern. USPR Cadigan and I stopped on South Side drive at El Capitan Cross and DEROUEN pulled in behind us. I told DEROUEN to pull in front of our vehicle to which she complied. I approached DEROUEN and asked her to step out of her vehicle. DEROUEN refused to exit the vehicle despite multiple commands to do so.

USPR Cassling arrived shortly thereafter and began speaking with DEROUEN and ST JAMES. ST JAMES claimed that her feet had been run over by our patrol vehicle as we left. USPR Cassling was investigating this claim when he noticed an open bottle of Hornitos tequila that had approximately 3-5 ounces remaining in the bottle on the floorboard next to ST JAMES. ST JAMES proceeded to show USPR Cassling a phone video she had taken during the vehicle stop. USPR Cassling could see multiple videos on the phone. On one of the videos that ST JAMES showed it started off being filmed from the front passenger seat. USPR Cassling saw the three occupants of the vehicle handling a black semiautomatic pistol and passing it from the front seating area into the back seating area and then it disappeared from view into the footwell of the back seat behind the drivers seat. USPR Cassling stated that he

saw a firearm in the video and requested to see the video again. ST JAMES demeanor and body language completely changed, she tensed up, started breathing faster, and she retracted back into the vehicle. USPR Cassling asked her if she could pause the video or slow it down so he could verify what he saw was not a firearm. ST JAMES then said the phone was having problems and both DEROUEN and ST JAMES started interacting with the phone. She then stated there was no service, the phone was "tweaking", all the while she was interacting with the phone. This went on for approximately 2 minutes before she showed USPR Cassling the phone screen again. When ST JAMES showed USPR Cassling the phone screen, he noted that many of the thumbnails he had seen prior were not visible indicating they were likely deleted or possibly moved into a hidden folder. USPR Cassling removed the occupants from the vehicle. USPR Cadigan frisked DEROUEN, ST JAMES, and the backseat occupant of the vehicle, Crystal Crawford under the Terry Doctrine.

At approximately 1815 we placed DEROUEN, ST JAMES, and Crawford in handcuffs. I handcuffed ST JAMES, ensuring proper spacing and double lock.

I began a probable cause search of the vehicle under the Carroll doctrine along with USPR Cassling. USPR Cassling found 9mm ammunition in the front right passenger compartment of the vehicle in an ammunition box. I found the firearm, a Ruger pistol, 9mm in caliber, serial #350161216 under the drivers seat. The firearm was not stored in any sort of container. The firearm had a bullet in the chamber and nine bullets in the magazine inside the magazine well. There was no trigger safety present on the firearm. The firearm was registered to DEROUEN. USPR Cassling seized the firearm and ammunition as evidence. USPR Cassling also seized the iphone as evidence for the destruction of the phone video.

USPR Cassling asked DEROUEN and STJAMES some questions after the search. DEROUEN confirmed that the firearm belonged to her. USPR Cassling told ST JAMES that he was going to give her one chance to answer a question. USPR Cassling had previously been talking about the firearm with DEROUEN for context. Before USPR Cassling got a chance to ask her a question, spontaneously and without prompting, ST JAMES stated "Was I holding it. Yes, I was" referring to the firearm that was located in the vehicle.

## CONCLUSION

Based on the forgoing facts of this affidavit, I believe probable cause existed for the arrest of ALLYSHAE IYANA ST JAMES for possessing an open container of alcohol inside of a motor vehicle, interference with a criminal investigation by deletion of digital evidence, and creating or maintaining a hazardous condition by intentionally striking a moving vehicle with her body.

Respectfully submitted,

*[signature]*
Nicholas P Sullens
United States Park Ranger
National Park Service

04/29/2024

Subscribed and sworn to before me on:

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 before me this day of April 29th, 2024.

*[signature]*
The Honorable
HELENA BARCH-KUCHTA
United States Magistrate Judge
Date April 29, 2024

Approved as to form by:

/s/ *Jeffrey A. Spivak*
JEFFREY A. SPIVAK
Assistant United States Attorney
Date: 4/29/2024

PAGE **6** OF **6**